BEFORE THE THIRD DIVISION, FEBRUARY 24, 1943

**No. 48053.**—Protest 12510–K of Atlas Trading Co. (Los Angeles).

EKWALL, Judge: This is an action against the United States in which the plaintiff seeks to recover money claimed to have been collected in excess of the amount due as customs duties upon an importation of rugs from Tientsin, China. It is the contention of the plaintiff that the liquidation was invalid in that the collector, in arriving at the cost of certain nondutiable charges appearing on the invoice, which were expressed in Tientsin dollars, converted the Tientsin dollars at the official rate of exchange as of the date of exportation rather than at the fixed rate of exchange shown on the invoice. The invoice set out the *per se* prices of the goods in United States dollars. Included in the invoice prices were charges for wharfage dues, buying commission, cartage, war risk and marine insurance,

consular fee, and freight, which amounted to T$1,721.75. At the foot of the invoice appears a notation "Rate of Exchange 16 and 16⅝." By reference to T. D. 49898 we find that the rate of exchange for the Tientsin dollar as certified to the Secretary of the Treasury by the Federal Reserve Bank for June 16, 1939, the date the invoice was consulated, was $.121083. The summary sheet discloses that the merchandise was appraised as entered.

As a result of the collector's action in converting the charges at the statutory rate of exchange rather than the arbitrary rate noted on the invoice, the cost of the nondutiable charges was decreased and the net taxable value of the merchandise increased.

The provisions of the statute (Tariff Act of 1930) governing the conversion of currency are as follows:

SEC. 522. CONVERSION OF CURRENCY

(a) VALUE OF FOREIGN COIN PROCLAIMED BY SECRETARY OF TREASURY.— Section 25 of the Act of August 27, 1894, entitled "An Act to reduce taxation, to provide revenue for the Government, and for other purposes," as amended, is reenacted without change as follows:

"SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year."

(b) PROCLAIMED VALUE BASIS OF CONVERSION.—For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this Act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of section 25 of such Act of August 27, 1894, as amended, for the quarter in which the merchandise was exported.

(c) MARKET RATE WHEN NO PROCLAMATION.—If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. If the date of exportation falls upon a Sunday or holiday, then the buying rate at noon on the last preceding business day shall be used. For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary of the Treasury, who shall make it public at such times and to such extent as he deems necessary. In ascertaining such buying rate such Federal reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange.

The examiner of this merchandise at the port of Los Angeles testified on behalf of the plaintiff. He stated that the invoice unit prices are c. i. f. Los Angeles, including certain nondutiable charges listed at the foot of the consular invoice in Tientsin Yuan dollars. He also stated that he reported to the appraiser for the purpose of appraisement the unit invoice prices and the nondutiable charges as entered. This witness stated that he was unable to tell from an examination of the official papers how the entry was liquidated.

The appraiser at the port of entry, who was acting appraiser at the time of entry of this merchandise, also testified on behalf of the plaintiff. He was allowed to testify, over objection by Government counsel, as follows:

Q. In other words the non-dutiable charges which are circled on the invoice and invoiced in Tientsin Yuan dollars actually cost the importer in U. S. dollars the amount of Yuan dollars so shown twice. 16⅝ cents, is that correct?
A. Yes.

This witness was ask whether he was familiar with the controversy involving the cost of such charges at that time, to which he answered:

It happened that I initiated the investigation. This resulted in the facts upon which the appraisement was based.

However, later on at the hearing the witness stated:

I did not initiate this investigation. I was confusing it with something else.

When asked:

What part did you play in the investigation of this particular controversy? the witness replied:

Nothing. I didn't do any investigating until much later.

In view of these admissions the testimony of this witness is of little if any probative value.

The plaintiff also introduced the testimony of the liquidator in the collector's office who was familiar with the transaction. He stated'that although the summary sheet indicated that the entered values were passed as correct by the appraiser by the checking in the "Appraised" column, the currency in which the nondutiable charges were invoiced was converted according to the provisions in section 522, supra, and that in making such liquidation he was guided by the statements on the official papers, and used the rate of exchange certified as of the day of exportation of the merchandise, viz, $.121083.

Counsel for the plaintiff in the course of the trial described at length the situation in China in regard to currency and also stated that because of this situation the appraiser at the port of entry had entered into an agreement with the importers in regard to the method of entering their merchandise. These statements, of course, cannot be considered as evidence. The only testimony of record which is of assistance to the court is that of the liquidator in regard to the liquidation. From that testimony it is apparent that he disregarded the statement on the invoice that the cost of the nondutiable charges was based upon a conversion of the Tientsin dollars in which they were set out at the rates of exchange of 16 and 16⅔ cents.

It would seem that had the appraiser, in making his appraisement, found the cost of the nondutiable charges to be other than as stated on the invoice, viz, T$1,721.75 at the arbitrary rate of exchange of $0.16 and $0.16⅔ he would have so indicated. Inasmuch as the per se values of the goods were set out in United States dollars, there was nothing on which the arbitrary rate of exchange could operate except the charges which were expressed in Tientsin dollars. There was no attempt on the part of the appraiser to appraise the charges; he returned them as they appeared on the invoice. The record is silent as to how the charges were prorated. The total value stated on the invoice less the nondutiable charges converted at the rate of $0 16 is given as $1,240.96. On entry this amount was divided into two parts and certain rugs which were valued under 40 cents a square foot were entered at a value of $1,235.36, while those valued at over 40 cents a square foot were entered at $5.60. The liquidator increased the value of the cheaper grade of rugs to a total of $1,302, but checked the values of the higher-priced rugs as correct.

The plaintiff argues in his brief that—

As the entire transaction, including the cost of the merchandise, is based upon the fixed rate of exchange, the collector cannot disregard the fixed rate of exchange in computing the charges, while on the other hand, adopting the fixed rate of exchange for the per se cost of the merchandise.

We fail to find any evidence that the collector adopted the fixed rate of exchange for the per se cost of the merchandise. The goods were invoiced and en-

tered in United States dollars. Therefore there was no occasion for the collector to consider the rate of exchange applicable to the *per se* cost of the merchandise.

Even were we to agree with plaintiff's contention that the nondutiable 'charges should have been converted at the fixed rates of exchange shown on the invoice, there is no evidence as to which rate, $0.16 or $0.16⅝, should have been used. In fact, the plaintiff's counsel in his brief claims that a rate of $0.13⅝ should have been used.

Upon this confused state of the record we are unable to find what rate should have been used in converting the nondutiable charges into United States dollars. Under the well-known rule that the burden is upon the importer to prove not only that the collector's action was wrong but that the claim made in his pleadings is correct, we find that the plaintiff has failed to sustain the burden of proof, and overrule the protest.

Judgment will be rendered accordingly.